———————————

# In the United States Court of Appeals for the District of Columbia Circuit

———————————

No. 20-7077

———————————

JOSHUA ATCHLEY, ET AL.,
*Plaintiffs-Appellants,*

*v.*

ASTRAZENECA UK LIMITED, ET AL.,
*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the District of Columbia
No. 1:17-cv-02136-RJL (Hon. Richard J. Leon)

———————————

## MOTION TO GOVERN FUTURE PROCEEDINGS

———————————

On June 24, 2024, the Supreme Court granted certiorari, vacated this Court's previous decision, and remanded for further consideration in light of *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023). The formal certified copy of the Supreme Court's order and judgment will issue on July 26, 2024. *See* S. Ct. R. 45.3.

Defendants-appellees submit this motion to respectfully propose a framework for further proceedings to efficiently resolve this Anti-Terrorism Act (ATA) lawsuit. Given this case's size and complexity, judicial economy would be best served by following this Court's most common practice after a grant, vacate, remand order—remanding to the district court to evaluate the intervening Supreme Court decision's impact on the case. Remand would also permit the district court to concurrently decide whether plaintiffs adequately alleged an "act of international terrorism" for direct liability—an issue this Court's initial decision left for "the district court to decide in the first instance." 22 F.4th 204, 238 (D.C. Cir. 2022).

Should the Court instead prefer to address *Taamneh* in the first instance itself, defendants suggest that the Court order supplemental briefing and set the case for reargument. If this is the Court's preference, defendants propose that the parties simultaneously file 6,500-word supplemental briefs 30 days after the issuance of a briefing order and 3,250-word supplemental reply briefs 21 days thereafter. Defendants conferred with plaintiffs' counsel regarding the relief requested in this motion. Plaintiffs oppose a remand to the district court but do not oppose defendants' alternative proposal for supplemental briefing.

# BACKGROUND

1.  The Court's previous decision is reported at 22 F.4th 204 (D.C. Cir. 2022). This case involves ATA claims by over 1,250 U.S. servicemembers, contractors, and family members who allege that defendants—21 global pharmaceutical and medical-device companies—committed or aided and abetted acts of international terrorism during the Iraq War.

In the mid-2000s, plaintiffs allege, defendants sold medicines or medical equipment to the Iraqi Ministry of Health or manufactured the medicines or medical equipment that other defendants sold. *Id.* at 212. Plaintiffs allege that defendants provided the Ministry with free medical supplies on top of paid-for quantities and paid commissions to Ministry officials, which plaintiffs characterize as bribes. *See id.*

From 2005 to 2008, the Iraqi Health Minster was a member of the Sadrist Trend political party—a party whose leader, Muqtada al-Sadr, opposed U.S. involvement in Iraq. *Id.* at 211-13. Plaintiffs assert that the Sadrists used their political clout to turn the Ministry into a "front" for their associated militia, Jaysh al-Mahdi. *Id.* Plaintiffs therefore contend that defendants' transactions with the Health Ministry were equivalent to funding Jaysh al-Mahdi. *Id.* at 212-13. And plaintiffs allege that they or their family

members were injured or killed in some 300-plus attacks that Jaysh al-Mahdi carried out during the Iraq War. *See id.* at 209.

In January 2020, plaintiffs filed the operative third amended complaint. Plaintiffs brought ATA direct-liability claims under 18 U.S.C. § 2333(a), alleging that defendants' transactions with the Health Ministry were "act[s] of international terrorism" and that plaintiffs were injured "by reason of" those acts. *Id.* at 215.

Plaintiffs also brought ATA aiding-and-abetting claims, alleging that defendants "knowingly provid[ed] substantial assistance" to Jaysh al-Mahdi's acts of international terrorism. *Id.* at 215-16 (quoting 18 U.S.C. § 2333(d)(2)). ATA aiding-and-abetting liability attaches only to attacks "committed, planned, or authorized by" U.S.-designated foreign terrorist organizations. *Id.* at 216 (quoting 18 U.S.C. § 2333(d)(2)). Jaysh al-Mahdi is not such an organization. *Id.* But plaintiffs contend that Hezbollah, which is a designated foreign terrorist organization, "committed, planned, or authorized" the attacks at issue. *Id.*

2. In July 2020, the district court dismissed the complaint. *Atchley v. AstraZeneca UK Ltd.*, 474 F. Supp. 3d 194, 200 (D.D.C. 2020). On direct liability, the court held that plaintiffs failed to plead proximate causation, *i.e.*,

that their injuries were "by reason of" defendants' actions. *Id.* at 209. The district court therefore did not reach defendants' alternative argument that transactions with the Iraqi Health Ministry were not "act[s] of international terrorism" as required for ATA direct liability. *See* 18 U.S.C. § 2333(a).

The district court dismissed plaintiffs' aiding-and-abetting claims for two independent reasons. First, plaintiffs could not show that a designated foreign terrorist organization "committed, planned, or authorized" over 90% of the attacks. 474 F. Supp. 3d at 211. As to those attacks, the court held that the complaint at best alleged that Hezbollah provided "[g]eneral support or encouragement" to Jaysh al-Mahdi, which does not satisfy the ATA's "plann[ing] or authoriz[ation]" requirement. *Id.*

Second, plaintiffs did not plead that defendants "knowingly provid[ed] substantial assistance" to an "act of international terrorism." *Id.* at 212 (quoting 18 U.S.C. § 2333(d)(2)). "At most," plaintiffs alleged "general support to" Jaysh al-Mahdi, not substantial assistance to any particular attack. *Id.* at 213. Nor did plaintiffs allege that defendants "intended to help" Jaysh al-Mahdi commit attacks. *Id.*

3. This Court reversed. 22 F.4th at 209. On direct liability, the Court held that plaintiffs adequately alleged that defendants proximately caused

plaintiffs' injuries and remanded on whether plaintiffs adequately alleged that defendants committed acts of international terrorism. *Id.* at 215. The Court stated that ATA proximate causation requires "(1) that defendants' acts were a substantial factor in the sequence of events that led to [plaintiffs'] injures and (2) that those injuries were reasonably foreseeable or anticipated as a natural consequence of defendants' conduct." *Id.* at 226 (cleaned up). Here, the Court held, it sufficed that defendants' alleged transactions with the Ministry "allow[ed] [Jaysh al-Mahdi] to grow" and thus "foreseeabl[y]" caused Jaysh al-Mahdi's campaign of attacks. *Id.* at 227.

The Court also held that plaintiffs stated aiding-and-abetting claims. *Id.* at 215. Even though Hezbollah was "more in the background" for most of the attacks, the Court held that plaintiffs had adequately "allege[d] that Hezbollah both planned and authorized the attacks against them." *Id.* at 216, 218.

The Court further held that plaintiffs adequately alleged that defendants "knowingly provided substantial assistance to Jaysh al-Mahdi." *Id.* at 209. On knowledge, the Court held that plaintiffs need allege only that defendants did not act "accidental[ly]." *Id.* at 222. On substantiality, the Court applied a six-factor test from *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).

22 F.4th at 221. After concluding that four factors favored plaintiffs, one favored defendants, and one was neutral, the Court deemed defendants' alleged assistance "substantial." *Id.* at 222-24.

Defendants sought rehearing en banc, which this Court denied. *Atchley v. AstraZeneca UK Ltd.*, 2023 WL 1479424, at *1 (D.C. Cir. Feb. 2, 2023).

4. In May 2023, the Supreme Court decided *Taamneh*, 143 S. Ct. 1206, the Supreme Court's first case interpreting the ATA. The Ninth Circuit had allowed family members of a victim of an ISIS terrorist attack to bring ATA claims alleging that Facebook, Google, and Twitter aided and abetted ISIS attacks by failing to remove terrorist content from their websites. *Id.* at 1215, 1217. The Supreme Court unanimously reversed, holding that plaintiffs' allegations fell "far short" of stating an ATA aiding-and-abetting claim and faulting the Ninth Circuit for "a series of missteps that, together, obscured the essence of aiding-and-abetting liability." *Id.* at 1229-30.

Critically, the Supreme Court held that the aiding-and-abetting analysis must focus "on assistance to the tort for which plaintiffs seek to impose liability," *i.e.*, the specific "act of international terrorism that injured the plaintiffs." *Id.* at 1225, 1230. The Ninth Circuit therefore erred by looking for alleged

"assistance to ISIS' activities in general" instead of "focus[ing]" on the specific ISIS terrorist attack. *Id.* at 1229.

The Supreme Court also faulted the Ninth Circuit's understanding of what "it mean[s] to 'aid and abet.'" *Id.* at 1218. The Ninth Circuit had "rigidly focuse[d] on" the "facts" and "exact phraseology" of this Court's decision in *Halberstam. Id.* at 1223. But *Taamneh* instead instructed courts to consider the "context of the common-law tradition" of aiding and abetting and ask whether "the defendant consciously and culpably participated in a wrongful act so as to help make it succeed." *Id.* at 1218, 1223 (cleaned up). Courts should consider knowledge and substantiality "in tandem" to identify "conscious and culpable assistance" to "the underlying tort." *Id.* at 1222. Accordingly, the Ninth Circuit erred by focusing "primarily on the value of defendants' platforms *to ISIS*, rather than whether defendants culpably associated themselves with ISIS' actions." *Id.* at 1229. And "the Ninth Circuit should have given much greater weight to defendants' … undisputed lack of intent to support ISIS." *Id.* at 1229-30.

Defendants subsequently petitioned the Supreme Court for certiorari, arguing that this Court's previous decision was inconsistent with *Taamneh*. The Supreme Court called for the views of the Solicitor General, who agreed

with defendants that the Supreme Court should vacate this Court's decision and remand for further proceedings in light of *Taamneh*. U.S. Br. 16, 23, *AstraZeneca UK Ltd. v. Atchley*, No. 23-9 (U.S. May 21, 2024). On June 24, 2024, the Supreme Court granted the petition for certiorari, vacated this Court's decision, and remanded for further proceedings in light of *Taamneh*.

## ARGUMENT

Defendants respectfully suggest that judicial economy would be best served by remanding the case to the district court for further proceedings consistent with *Taamneh*. A remand would allow the district court to comprehensively analyze *Taamneh*'s impact and also decide the act-of-international terrorism issue that this Court previously remanded. *Atchley*, 22 F.4th at 238. Alternatively, the Court should permit the parties to file 6,500-word supplemental briefs and 3,250-word reply briefs and set the case for reargument.

## I.   This Case Should Be Remanded to the District Court

The Court should follow its common practice and remand for the district court to address *Taamneh*'s application to this case in the first instance. In the last ten years, the Supreme Court appears to have granted certiorari to

this Court, vacated this Court's judgment, and remanded for further proceedings on four occasions. In three of those cases, this Court remanded to the district court.[1] In the other case, this Court ordered supplemental briefing.[2]

The most common course—remand to the district court—is appropriate here. *Taamneh* makes clear that plaintiffs must allege that each of the 21 defendants "consciously and culpably participate[d] in" each at-issue "act of international terrorism" "in such a way as to help make it succeed." 143 S. Ct. at 1225 (cleaned up). The operative third amended complaint is 3,256 paragraphs long and involves hundreds of alleged terrorist attacks that took place at different times over many years across a country the size of California. The complaint makes separate allegations against defendants from five corporate families, Third Am. Compl. ¶¶ 188-332, and alleges different levels of involvement with the Health Ministry by different defendants at different times, *see* 22 F.4th at 230. The district court is best positioned to evaluate in the first instance whether plaintiffs have adequately alleged a sufficient nexus between

---

[1] *Estate of Klieman ex rel. Kesner v. Palestinian Auth.*, 820 F. App'x 11 (D.C. Cir. 2020); *United States ex rel. Shea v. Cellco P'ship*, 614 F. App'x 519 (D.C. Cir. 2015); *Gilardi v. DHHS*, 575 F. App'x 1 (D.C. Cir. 2014).

[2] *Bohon v. FERC*, No. 20-5203 (D.C. Cir. June 8, 2023), Doc. 2002818.

each defendant and each attack, and the requisite intent as to each defendant, in light of *Taamneh*.

Indeed, the Ninth Circuit remanded *Taamneh*'s companion case, *Gonzalez v. Google, LLC*, to the district court. 71 F.4th 1200, 1201 (9th Cir. 2023). In *Gonzalez*, the Supreme Court questioned whether a complaint nearly verbatim to *Taamneh*'s stated "any claim for relief" and remanded for further proceedings. 143 S. Ct. 1191, 1192 (2023). The Ninth Circuit remanded to the district court even though *Taamneh*'s application to that complaint was next-to tautological—the only real question was whether to grant leave to amend.[3] *See id.* Here, where the parties vigorously dispute *Taamneh*'s application to the complaint, remand is even more appropriate.

Remand would also permit the district court to address a straightforward issue that this Court already remanded: Whether selling medicines or medical equipment to the Iraqi Health Ministry—even corruptly, as plaintiffs

---

[3] In another ATA case in this district, the same lawyers who represent plaintiffs here sought and obtained leave to amend their complaint following *Taamneh*, including by dismissing the direct-liability claims against the majority of the defendants in that case. *See Cabrera v. Black & Veatch Special Project Corp.*, 2024 WL 1435146, at *2 (D.D.C. Mar. 28, 2024). If plaintiffs here plan to amend their allegations in light of *Taamneh*, judicial economy would be best served by permitting them to seek leave to do so now, rather than after another round of appellate litigation.

allege—is an "act of international terrorism" as required for ATA direct liability. This Court's initial decision left that question for "the district court to decide in the first instance." 22 F.4th at 238. Remand would permit the district court to take up that invitation together with its analysis of *Taamneh*, potentially obviating the need for this Court to decide how *Taamneh* affects the proximate-causation analysis—an element this Court described as "more challenging" in its initial opinion. *See id.* at 225.

Remand would not produce needless delay. Plaintiffs objected that the Supreme Court should not grant, vacate, and remand to this Court given that this case was filed in 2017. Br. in Opp. 2. But this case's longevity is largely attributable to plaintiffs' decision to repeatedly amend the complaint. Once plaintiffs filed their operative third amended complaint in January 2020, the district court took less than six months to entertain briefing and dismiss. And, remand could streamline this case by permitting the district court to issue a single, comprehensive decision addressing both the straightforward "act of international terrorism" ground and *Taamneh*'s impact.

## II. Alternatively, the Parties Should File Supplemental Briefs Followed by Reargument

Should this Court prefer to address *Taamneh*'s application to this complaint in the first instance, the parties should file supplemental briefs and the

case should be set for reargument.  Defendants propose that the parties file 6,500-word briefs 30 days after the Court issues a briefing order, with 3,250-word reply briefs 21 days thereafter.

In the one recent case where this Court did not remand to the district court after a grant, vacate, remand order, this Court permitted the parties to file simultaneous, supplemental briefs addressing the intervening Supreme Court decision's impact on the case at hand, followed by simultaneous, supplemental reply briefs.  *Bohon*, No. 20-5203, Docs. 2002818, 2019070.  Given that the parties contest *Taamneh*'s application to this complaint, adversarial briefing would likewise be appropriate here.

Defendants propose supplemental briefing that would be half the standard length for opening and reply briefs on appeal.  In *Bohon*, this Court permitted supplemental briefs of 5,000 words followed by 3,500-word reply briefs. *Bohon*, No. 20-5203, Docs. 2006813, 2019070.  Defendants suggest a modestly longer word limit here.  As discussed, plaintiffs' allegations cover 1,250-plus plaintiffs, 21 defendants, and 300-plus attacks across Iraq.  This Court's initial opinion ran to over 16,000 words.  In defendants' view, *Taamneh* requires a top-to-bottom rethinking of much of that analysis, on both aiding-and-abetting

and direct liability.  Half-length briefs would permit the parties to address the disputed issues without burdening the Court with lengthy filings.

Given this case's complexity, defendants also respectfully suggest that reargument may aid the Court's decision-making process.  In at least one older case, this Court permitted reargument after a grant, vacate, remand order. *Moore v. Hartman*, No. 10-5334 (D.C. Cir. June 26, 2012), Doc. 1380714; *id.* (D.C. Cir. Sept. 11, 2012), Doc. 1393781.  Defendants would welcome the opportunity to present reargument here at the Court's convenience.

## CONCLUSION

The case should be remanded to the district court for further proceedings in light of *Taamneh*.  Alternatively, the Court should order the parties to file 6,500-word supplemental briefs 30 days from the date of the order and 3,250-word reply briefs 21 days thereafter, and set the case for reargument.

Dated: JUNE 26, 2024

Respectfully submitted,

*/s/ Lisa S. Blatt*

KANNON K. SHANMUGAM
JEH C. JOHNSON
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*

*Counsel for Johnson & Johnson, Cilag GmbH International, Ethicon Endo-Surgery, LLC, Ethicon, Inc., Janssen Ortho LLC, Janssen Pharmaceutica NV, Johnson & Johnson (Middle East) Inc., and Ortho Biologics LLC*

JESSICA S. CAREY
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019-6064*
  *United States*
  *(212) 373-3000*

*Counsel for Johnson & Johnson, Cilag GmbH International, Ethicon Endo-Surgery, LLC, Ethicon, Inc., Janssen Ortho LLC, Janssen Pharmaceutica NV, Johnson & Johnson (Middle East) Inc., and Ortho Biologics LLC*

LISA S. BLATT
  *Counsel of Record*
CHRISTOPHER N. MANNING
SARAH M. HARRIS
MELISSA B. COLLINS
AARON Z. ROPER
KRISTEN A. DEWILDE
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue, S.W.*
  *Washington, DC 20024*
  *(202) 434-5000*
  *(202) 434-5029*
  *lblatt@wc.com*

*Counsel for Pfizer Inc., Pfizer Pharmaceuticals LLC, Pfizer Enterprises SARL, Pharmacia & Upjohn Company LLC, and Wyeth Pharmaceuticals LLC*

DAVID M. ZIONTS
S. CONRAD SCOTT
COVINGTON & BURLING LLP
  *One City Center*
  *850 Tenth Street, N.W.*
  *Washington, DC 20001*
  *(202) 662-5312*

*Counsel for F. Hoffmann-La Roche Ltd*

JOHN B. BELLINGER III
DAVID J. WEINER
ARNOLD & PORTER
KAYE SCHOLER LLP
  601 Massachusetts Ave., N.W.
  Washington, DC 20001
  (202) 942-5000

ROBERT REEVES ANDERSON
ARNOLD & PORTER
KAYE SCHOLER LLP
  1144 Fifteenth Street,
  Suite 3100
  Denver, CO 80202-1370
  (303) 863-2325

*Counsel for GE Healthcare USA
Holding LLC, GE Medical Systems
Information Technologies, Inc., and
GE Medical Systems Information
Technologies GmbH*

DAVID W. BOWKER
CATHERINE M.A. CARROLL
DONNA M. FARAG
WILMER CUTLER PICKERING
HALE AND DORR LLP
  2100 Pennsylvania Ave., NW
  Washington, DC 20037
  (202) 663-6000

*Counsel for Genentech, Inc. and
Hoffmann-La Roche Inc.*

PAUL S. MISHKIN
DAVID B. TOSCANO
CRAIG T. CAGNEY
DAVIS POLK & WARDWELL LLP
  450 Lexington Avenue
  New York, NY 10017
  (202) 450-4292

*Counsel for AstraZeneca Pharma-
ceuticals LP and AstraZeneca UK
Limited*

## CERTIFICATE OF COMPLIANCE WITH
## TYPEFACE AND WORD-COUNT LIMITATIONS

I, Lisa S. Blatt, counsel for Defendants-Appellees and a member of the Bar of this Court, certify pursuant to Federal Rules of Appellate Procedure 27(d) and 32(g) that the foregoing motion is proportionally spaced, has a sans serif typeface of 14 points or more, and contains 2,632 words.

*/s/ Lisa S. Blatt*
LISA S. BLATT

**CERTIFICATE OF SERVICE**

I, Lisa S. Blatt, certify that on June 26, 2024, a copy of the foregoing

Motion to Govern Further Proceedings was filed with the Clerk and served on

all parties through the Court's electronic filing system. I further certify that

all parties required to be served have been served.

/s/ Lisa S. Blatt
LISA S. BLATT

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, counsel for defendants-appellees make the following certifications:

AstraZeneca UK Limited—a private limited company organized under the laws of England and Wales, with its principal place of business in Cambridge, United Kingdom—is a biopharmaceutical company focusing on the discovery, development, manufacturing and commercialization of medicines. AstraZeneca UK Limited is an indirectly wholly-owned subsidiary of AstraZeneca PLC. AstraZeneca PLC is a public company organized under the laws of England and Wales and is publicly traded. On information and belief, no other publicly held company owns 10% or more of the voting interest in AstraZeneca UK Limited.

AstraZeneca Pharmaceuticals LP—a limited partnership organized under the laws of the State of Delaware with its principal place of business in Wilmington, Delaware—is a biopharmaceutical company focusing on the discovery, development, manufacturing and commercialization of medicines. AstraZeneca Pharmaceuticals LP is an indirectly wholly-owned subsidiary of AstraZeneca PLC. AstraZeneca PLC is a public company organized under the laws of England and Wales and is publicly traded. On information and

belief, no other publicly held company owns 10% or more of the voting interest in AstraZeneca Pharmaceuticals LP.

F. Hoffmann-La Roche Ltd—a Swiss corporation with its principal place of business at Basel, Switzerland—is a healthcare company focusing on the discovery, development, and delivery of pharmaceutical medicines and medical diagnostics for improved disease management and patient care. F. Hoffmann-La Roche Ltd is a wholly owned subsidiary of Roche Holding Ltd. Roche Holding Ltd is publicly traded on the Swiss Stock Exchange. On information and belief, no publicly held company owns 10% or more of the voting interest in Roche Holding Ltd.

Genentech, Inc.—a Delaware corporation with its principal place of business at South San Francisco, California—is a biotechnology company dedicated to discovering and developing medicines for people with serious and life-threatening diseases. Genentech, Inc. is a wholly owned subsidiary of Roche Holdings, Inc. Roche Holdings, Inc.'s ultimate parent, Roche Holding Ltd, is publicly traded on the Swiss stock exchange. On information and belief, no publicly held company owns 10% or more of the voting interest in Roche Holding Ltd.

Hoffmann-La Roche Inc.—a New Jersey corporation with its principal place of business in Nutley, New Jersey—is a marketer of pharmaceutical medicines. Hoffmann-La Roche Inc. is a wholly owned subsidiary of Roche Holdings, Inc. Roche Holdings, Inc.'s ultimate parent, Roche Holding Ltd, is publicly traded on the Swiss stock exchange. On information and belief, no publicly held company owns 10% or more of the voting interest in Roche Holding Ltd.

GE Healthcare USA Holding LLC is a healthcare company focused on providing healthcare technologies in medical imaging, digital solutions, patient monitoring and diagnostics, and performance enhancement solutions. GE Healthcare USA Holding LLC is owned by GE Medical Systems Information Technologies, Inc., which is not publicly traded.

GE Medical Systems Information Technologies GmbH manufactures and provides medical electronic equipment and systems for the diagnosis and monitoring of patients requiring critical care. GE Medical Systems Information Technologies GmbH is wholly owned by GE Healthcare Holding Germany GmbH, which is not publicly traded. GE Healthcare USA Holding LLC and GE Medical Systems Information Technologies GmbH's ultimate parent is GE HealthCare Technologies Inc.

GE Medical Systems Information Technologies, Inc. manufactures and provides medical electronic equipment and systems for the diagnosis and monitoring of patients requiring critical care. GE Medical Systems Information Technologies, Inc. is a wholly owned indirect subsidiary of GE HealthCare Technologies Inc. GE HealthCare Technologies Inc. is a publicly held company. Upon information and belief, no publicly held company holds 10% or more of its stock. Upon information and belief, no other publicly held company owns 10% or more of the stock in GE Healthcare USA Holding LLC, GE Medical Systems Information Technologies GmBH, or GE Medical Systems Information Technologies, Inc.

Johnson & Johnson is a healthcare company incorporated in New Jersey that manufactures and provides pharmaceutical medicines and medical devices. Cilag GmbH International, Ethicon Endo-Surgery, LLC, Janssen Ortho LLC, Janssen Pharmaceutica NV, and Ortho Biologics LLC are indirect subsidiaries of Johnson & Johnson. Ethicon, Inc. and Johnson & Johnson (Middle East) Inc. are wholly owned subsidiaries of Johnson & Johnson. Johnson & Johnson is a publicly owned corporation, and no publicly held corporation holds 10% or more of its stock.

Pfizer Inc. is a corporation incorporated in Delaware. Pfizer Inc. is publicly traded on the New York Stock Exchange, and, on information and belief, no publicly held corporation owns 10% or more of Pfizer Inc.'s voting shares.

Pfizer Enterprises SARL has merged into Pfizer Holdings International Luxembourg (PHIL) SARL, a limited liability company (société à responsabilité limitée) existing under the laws of Luxembourg. Pfizer Holdings International Luxembourg (PHIL) SARL is an indirect wholly-owned subsidiary of Pfizer Inc. Pfizer Inc. is publicly traded, and, on information and belief, no publicly-held corporation owns 10% or more of Pfizer Inc.'s voting shares.

Pfizer Pharmaceuticals LLC has since been renamed Viatris Pharmaceuticals LLC and is a limited liability company organized in Delaware. Viatris Pharmaceuticals LLC is an indirect wholly-owned subsidiary of Viatris Inc. Viatris Inc. is publicly traded, and, on information and belief, no publicly-held corporation owns 10% or more of Viatris Inc.'s voting shares.

Pharmacia & Upjohn Company LLC is a limited liability company organized in Delaware. Pharmacia & Upjohn Company LLC is an indirect wholly-owned subsidiary of Pfizer Inc. Pfizer Inc. is publicly traded, and, on information and belief, no publicly-held corporation owns 10% or more of Pfizer Inc.'s voting shares.

Wyeth Pharmaceuticals LLC (fka Wyeth Pharmaceuticals Inc.) is a limited liability company organized in Delaware. Wyeth Pharmaceuticals LLC is an indirect wholly-owned subsidiary of Pfizer Inc. Pfizer Inc. is publicly traded, and, on information and belief, no publicly-held corporation owns 10% or more of Pfizer Inc.'s voting shares.

JUNE 26, 2024

/s/ Lisa S. Blatt
LISA S. BLATT