ORAL ARGUMENT HELD SEPTEMBER 21, 2021

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 20-7077

JOSHUA ATCHLEY, *et al.*,

*Plaintiffs-Appellants*,

v.

ASTRAZENECA UK LIMITED, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the District of Columbia,
No. 1:17-cv-02136-RJL (Hon. Richard J. Leon)

## RESPONSE TO MOTION TO GOVERN FURTHER PROCEEDINGS

Plaintiffs agree with Defendants' supplemental-briefing proposal but oppose their motion to remand.[1]  Sending this seven-year-old case back to the district court would cause further delay and waste judicial resources.  Instead, the Court should follow its typical post-GVR practice and invite streamlined supplemental briefs

---

[1] Specifically, Plaintiffs do not oppose Defendants' alternative request (at 2, 12-14) for 6,500-word supplemental briefs 30 days after any briefing order and 3,250-word reply briefs 21 days after that.  Plaintiffs disagree with Defendants (at 2, 14) that reargument is needed but defer to the Court's preference.  If the Court does order reargument, Plaintiffs respectfully request that it occur as quickly as possible after supplemental briefing is complete.

addressing *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023). The Court then should reaffirm its prior ruling, hold that Plaintiffs' "unusual[ly] detail[ed]" complaint continues to state a claim under the Antiterrorism Act, *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 213 (D.C. Cir. 2022), and remand for discovery.

This Court recently adopted just that procedure after a GVR. In *Bohon v. FERC*, 92 F.4th 1121 (D.C. Cir. 2024), the Court "ordered supplemental briefing about [the intervening decision's] effects on our earlier judgment," and then promptly "reinstate[d] our previous judgment." *Id*. at 1122. Both process and result should be the same here. The question now before this Court is whether Defendants' "corrupt provision of free goods and cash bribes to do business with a Ministry completely overrun by Jaysh al-Mahdi," *Atchley*, 22 F.4th at 210, remains sufficiently "conscious, voluntary, and culpable" to support aiding-abetting liability after *Twitter*, 143 S. Ct. at 1223. The answer is yes. No remand is needed for this Court to read *Twitter* and confirm that Defendants' years of intentionally bribing terrorists is still blameworthy enough to state a plausible claim.

## BACKGROUND

As the complaint alleges in exhaustive detail, Defendants paid millions of dollars in cash and in-kind bribes to the terrorist group Jaysh al-Mahdi. *Atchley*, 22 F.4th at 210. That group had taken over Iraq's Ministry of Health, and Defendants secured lucrative medical-supply contracts from the Ministry by

paying off the terrorists in charge. *Id.* at 209. Those bribes directly financed Jaysh al-Mahdi's attacks on Americans in Iraq. *Id.* at 212-13. Plaintiffs were among the victims. *Id.*

Plaintiffs filed this case in October 2017. Nearly three years later, in July 2020, the district court dismissed Plaintiffs' claims.

In January 2022, this Court reversed, holding that Plaintiffs sufficiently alleged aiding-abetting claims and proximate cause under the Act. *See* 18 U.S.C. § 2333(a), (d)(2). Plaintiffs alleged "in unusual detail," *Atchley*, 22 F.4th at 213, that Defendants knew they were funding terrorism with "millions of dollars of cash and cash-equivalents" to Jaysh al-Mahdi, *id.* at 210. Those bribes were "a considerable source of funding that helped [Jaysh al-Mahdi] commit multiple terrorist acts," *id.* at 222, "foreseeably including the attacks against plaintiffs," *id.* at 225. This Court also held that Plaintiffs plausibly alleged that Hezbollah, the designated terrorist organization that co-founded Jaysh al-Mahdi, "committed, planned, or authorized" each attack. *Id.* at 216-17 (quoting 18 U.S.C. § 2333(d)(2)).

Defendants sought rehearing en banc, which stayed the Court's mandate. Docs. 1933636; 1933668. After a year had passed, Plaintiffs moved to expedite issuance of the mandate. Doc. 1983137. Eight days later, the Court unanimously denied rehearing, Doc. 1984411, and then returned the mandate to the district

court, Doc. 1984478.  On remand, the first action the district court took (over

Plaintiffs' opposition) was to issue what it described as a "Temporary Partial Stay"

pending the Supreme Court's decision in *Twitter*.  Minute Order (Mar. 1, 2023).

Two months after that stay, in May 2023, the Supreme Court in *Twitter*

reaffirmed the "deep-rooted common-law basis" for aiding-abetting liability under

the Act.  143 S. Ct. at 1223.  It instructed courts considering aiding-abetting claims

to look for the same conduct "that has animated aiding-and-abetting liability for

centuries":  "conscious, voluntary, and culpable participation in another's

wrongdoing." *Id.*  As Justice Jackson noted, the Court's unanimous decision was

"narrow in important respects."  *Id.* at 1231 (Jackson, J., concurring).

The next month, the parties informed the district court about *Twitter* and

offered competing case management plans.  Dkt. 179.  Defendants asked to extend

the stay pending their forthcoming certiorari petition, which Plaintiffs opposed.

Plaintiffs asked the court to lift its stay and permit discovery to begin.  The district

court took no action, effectively extending its March 2023 stay and continuing to

block discovery.  That stay remains in place today.  No discovery has occurred.

Meanwhile, Defendants petitioned for certiorari.  They sought a grant,

vacate, remand order in light of *Twitter*, or alternatively plenary review of this

Court's decision.  The Supreme Court called for the views of the United States,

which opposed plenary review but recommended a GVR because this Court had

rendered its decision "without the benefit of [the Supreme] Court's guidance" in *Twitter*. Brief for the United States as Amicus Curiae at 10-11, *AstraZeneca UK Ltd. v. Atchley*, No. 23-9 (U.S. May 21, 2024) ("U.S. CVSG Br."). While the government lamented that a GVR would cause "further delay in this long-pending case," it emphasized that "the court of appeals may seek to minimize any delay on remand." *Id.* at 21.

The Supreme Court then granted certiorari, vacated this Court's judgment, and remanded "for further consideration in light of" *Twitter*. *AstraZeneca UK Ltd. v. Atchley*, No. 23-9, 2024 WL 3089470, at *1 (U.S. June 24, 2024). The Supreme Court's formal judgment will issue on July 26. *See* Doc. 2061360.

## ARGUMENT

### I.    The Court Should Order Simultaneous Briefing On The Relevance Of *Twitter* And Decide That Issue In The First Instance

**A.**    *Twitter*'s effect on this Court's prior opinion presents a pure question of law this Court should decide now. "[I]t is well-settled that a GVR has no precedential weight and does not dictate how the lower court should rule on remand." *Texas v. United States*, 798 F.3d 1108, 1116 (D.C. Cir. 2015).[2] A GVR order instead gives a court of appeals "opportunity for further consideration" when

---

[2] This Court has further cautioned against drawing any "inferences" from the "weak" signals of a GVR order requested by the government. *In re Sealed Case*, 246 F.3d 696, 699 (D.C. Cir. 2001).

an intervening decision could be material to its analysis. *Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (per curiam). The Court should take the opportunity to clarify that *Twitter* does not support dismissing Plaintiffs' claims.

Ruling rather than remanding is the proper course. In most GVR cases, this Court already has familiarity with the relevant legal issues, making a remand unnecessary. That is why the Court typically responds to a GVR by addressing the intervening authority itself. *See Bohon*, 92 F.4th at 1122 (reaffirming prior ruling after supplemental briefing); *Moore v. Hartman*, 704 F.3d 1003, 1004 (D.C. Cir. 2013) (same procedure with same result); *Rasul v. Myers*, 563 F.3d 527, 533 (D.C. Cir. 2009) (same); *Oguaju v. United States*, 378 F.3d 1115, 1116 (D.C. Cir. 2004) (same). For the same reasons, the Court should follow its ordinary practice here.

The Court's broader practices point in the same direction. Even outside the GVR context, this Court will resolve a new issue rather than remand it when (1) the parties have "fully briefed the issue," (2) it raises "purely legal questions" subject to de novo review, (3) "[t]he district court has no comparative advantage" in resolving the issue, and (4) "[a] remand to the district court would be a waste of judicial resources." *Mendoza v. Perez*, 754 F.3d 1002, 1020 (D.C. Cir. 2014).

This case meets all four conditions. *First*, the parties already have briefed how *Twitter* affects Plaintiffs' claims – that was the central focus of the certiorari-stage briefing at the Supreme Court. Under Defendants' alternative proposal,

which Plaintiffs support, the parties could efficiently update that briefing and file it with this Court. *Second*, this motion-to-dismiss appeal continues to present pure "points of law" the Court reviews de novo. *Atchley*, 22 F.4th at 210. *Third*, the district court has no comparative advantage in reading the complaint or in applying *Twitter* to the allegations. After all, this Court has already scrutinized the "588 pages" of allegations in detail, *id.* at 214, and its earlier, well-reasoned opinion gives this Court ample familiarity with the relevant legal principles. Remanding for the district court to look at those issues itself would not meaningfully aid the Court's legal analysis. *Fourth*, remanding for the district court to assess *Twitter* in the first instance – an issue this Court would then review de novo anyway – would waste judicial resources. It is far more efficient for the Court to decide those issues now and "remand for further proceedings consistent with [its] opinion." *Id*. at 239.

    **B.**    Defendants offer no good reason to depart from that common practice, and their counterexamples (at 10 n.1) lend them no support. In two of them, *Estate of Klieman* and *Gilardi*, neither side opposed a remand or sought supplemental briefing. *See Estate of Klieman ex rel. Kesner v. Palestinian Auth.*, No. 15-7034 (D.C. Cir.); *Gilardi v. DHHS*, No. 13-5069 (D.C. Cir.). In the third, *Shea*, only one side asked for supplemental briefing, and then just on issues it admitted "neither this Court nor the district court addressed." Doc. 1556075 at 2, *United States ex*

*rel. Shea v. Cellco P'ship*, No. 12-7133 (D.C. Cir. June 5, 2015). Facing no substantial opposition, the Court sensibly remanded all three cases.

Defendants' last example (at 11), *Google* (*Twitter*'s companion case), is even less applicable. There, the secondary-liability allegations were "materially identical to those at issue in *Twitter*." *Gonzalez v. Google LLC*, 143 S. Ct. 1191, 1192 (2023). Plaintiffs thus asked the Supreme Court for "leave to amend their complaint," which, in its pre-amendment form, the Court had unanimously observed "appear[ed] to state little, if any, plausible claim for relief." *Id*. Neither side asked for further appellate proceedings, and the Ninth Circuit rightly remanded. *Gonzalez v. Google, LLC*, 71 F.4th 1200 (9th Cir. 2023). This case is different, and not just because both sides agree that supplemental briefing would aid this Court. Here, unlike in *Google*, the Supreme Court did not address Plaintiffs' complaint at all, much less suggest that it fails to state a claim. So this Court can and should consider how *Twitter* affects its prior opinion itself.

Defendants similarly err (at 11-12) in urging a remand for the district court to address "whether plaintiffs have alleged that defendants themselves committed 'acts of international terrorism'" for purposes of primary liability. *Atchley*, 22 F.4th at 230. True, this Court remanded on that question when reversing the district court's earlier judgment. But the Court did so only *after* reversing the district court's erroneous rulings on causation and secondary liability. It should do

so again here.  This Court previously remanded (rather than ruled) on the "act of

international terrorism" question because "it was only lightly briefed on this

appeal" and could be dealt with efficiently on remand "in any event."  *Id*.  That

limited remand hardly justifies now punting the entire case back to the district

court to start over.  Indeed, *Twitter* has nothing to say about how to define an "act

of international terrorism."  So this Court should address *Twitter* now, reverse the

district court's flawed rulings, and remand again on the remaining issue.

## II.     Remand Would Needlessly Delay This Seven-Year-Old Case

A remand now is especially unwarranted because of the delays it would

cause.  Plaintiffs sued in October 2017 – nearly seven years ago.[3]  The district

court dismissed the complaint in July 2020 – nearly four years ago.  And this Court

reversed that dismissal in January 2022 – nearly two-and-a-half years ago.  Yet

Plaintiffs' claims still have not advanced out of the starting gate.  Immediately

after this Court issued its mandate reversing the judgment below, the district court

"temporar[ily]" stayed further proceedings.  Minute Order (Mar. 1, 2023).  That

---

[3] Defendants cannot persuasively blame (at 12) the delays on Plaintiffs' amended complaints.  On the merits, Plaintiffs have amended just once, in March 2018.  Dkt. 67 (First Amended Complaint).  Although Plaintiffs then formally amended twice more, Dkts. 106, 124, they did so solely to add or substitute Plaintiffs (whose claims risked becoming time-barred) without changing any substantive allegation.  In fact, Plaintiffs filed those later amendments under stipulations barring them from changing the factual allegations, for the purpose of avoiding any need to rebrief the April 2018 motions to dismiss.  Dkts. 95, 96, 125.

stay has remained in place before, during, and after Defendants' certiorari petition

– now 16 months and counting.  Meanwhile, the "evidentiary development" this

Court's opinion contemplated has not even begun.  *Atchley*, 22 F.4th at 230.

Another remand would compound those delays.  A remand to the district

court would add an extra step and consume additional time and resources.[4]  And if

the district court were to reinstate its initial judgment, the parties would end up

back in this Court in the same posture they are in now – except it could be a year

from now, or even later.  The Supreme Court's GVR order does not support such a

postponement.  Indeed, the government supported a GVR in part on the premise

that "the court of appeals may seek to minimize any delay on remand."  U.S.

CVSG Br. at 21.  A multiyear remand would undermine that premise.

Further delay would also work substantial prejudice.  Plaintiffs are Gold Star

Families and military veterans who were killed or wounded in terrorist attacks

while "serving their country in Iraq between 2005 and 2011."  JA97.  Defendants

made "corrupt payments" to the responsible terrorists "between 2004 and 2013."

---

[4] Defendants note (at 12) that the parties finished briefing the last motion to dismiss in February 2020, only five months before the district court ruled.  But they omit that the February 2020 briefing was *identical* to briefing the parties had filed the previous year, which the district court ordered the parties to re-submit. *See* Dkt. 126 ("the parties shall refile their prior briefing").  They also omit that Plaintiffs' factual allegations have not changed since March 2018 – 28 months before the court ruled.  *See* Dkts. 96, 125 (stipulations governing amendments).

JA100.  This case thus centers on misconduct and injuries that are now more than a decade old.  As time continues to pass, "delaying" the case "increase[s] the danger of prejudice resulting from the loss of evidence."  *Clinton v. Jones*, 520 U.S. 681, 707-08 (1997).  Continued delay also poses risks that memories will fade or "witnesses will die."  *Sibron v. New York*, 392 U.S. 40, 57 (1968).

The risk of prejudice here is acute.  By January 2023, as Plaintiffs previously told this Court, 19 plaintiffs had died since this suit began.  Doc. 1983137 at 3.  In the 18 months since then, the number tragically has grown to 25.  The case should resume before any more Plaintiffs pass away.  *See Clinton*, 520 U.S. at 708 (prejudice from delay "includ[es] . . . the possible death of a party").  That can only happen with swift action from this Court.

A prompt resolution of the legal issues *Twitter* raises is especially needed because of the additional delays that could follow this Court's ruling.  If the Court reaffirms its prior ruling, Defendants likely will again seek rehearing, again take the maximum extension, and then again petition for certiorari.  Last time, that process took nearly 30 months.  And the district court stayed the case the whole time over Plaintiffs' opposition.  So even with a prompt ruling from this Court, Plaintiffs face the risk of more delay before discovery is finally allowed to begin.  A needless remand on top of all that would simply worsen the prejudice.

## CONCLUSION

The Court should deny Defendants' request for remand.  The Court instead should order the parties to address *Twitter*'s effect on the Court's prior ruling in simultaneous 6,500-word supplemental briefs 30 days after any briefing order and 3,250-word reply briefs 21 days after that.

Respectfully submitted,

/s/ *Joshua D. Branson*

DAVID C. FREDERICK
JOSHUA D. BRANSON
ANDREW E. GOLDSMITH
DEREK C. REINBOLD
KELLOGG, HANSEN, TODD,
    FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
jbranson@kellogghansen.com
agoldsmith@kellogghansen.com
dreinbold@kellogghansen.com

*Counsel for Plaintiffs-Appellants*
*Joshua Atchley, et al.*

July 8, 2024

12

**CERTIFICATE OF COMPLIANCE**

I certify, pursuant to Federal Rule of Appellate Procedure 32(g), that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f), the motion contains 2,618 words.

I further certify that this motion complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced typeface (Times New Roman, 14 point).

/s/ *Joshua D. Branson*
Joshua D. Branson

July 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that, on July 8, 2024, I caused to be filed electronically the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Joshua D. Branson*
Joshua D. Branson