# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 20-7077

JOSHUA ATCHLEY, *et al.*,
                              *Plaintiffs-Appellants,*

v.

ASTRAZENECA UK LIMITED, *et al.*,
                              *Defendants-Appellees.*

Appeal from the United States District Court for the District of Columbia,
No. 1:17-cv-02136-RJL (Hon. Richard J. Leon)

## SUPPLEMENTAL REPLY BRIEF FOR PLAINTIFFS-APPELLANTS JOSHUA ATCHLEY, *ET AL.*

DAVID C. FREDERICK
JOSHUA D. BRANSON
ANDREW E. GOLDSMITH
DEREK C. REINBOLD
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
jbranson@kellogghansen.com
agoldsmith@kellogghansen.com
dreinbold@kellogghansen.com

*Counsel for Plaintiffs-Appellants*
*Joshua Atchley, et al.*

September 16, 2024

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................. ii

GLOSSARY .................................................................................... iv

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................... 2

I.      THE COURT SHOULD REAFFIRM ITS PRIOR JUDGMENT ................. 2

    A.      *Twitter* Does Not Support Rewriting The Complaint .......................... 2

    B.      Defendants' Secondary-Liability Arguments Misread *Twitter* ............................................................................. 3

        1.      Intent ................................................................... 3

        2.      Nexus ................................................................... 8

    C.      The Court Should Reinstate Its Direct-Liability Rulings .................... 11

II.     DEFENDANTS' POLICY ARGUMENTS STILL LACK MERIT ............. 12

CONCLUSION ............................................................................... 14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

Page

**CASES**

*Amazon Servs. LLC v. U.S. Dep't of Agric.*, 109 F.4th 573
(D.C. Cir. 2024) ...................................................................................4, 5

*AstraZeneca UK Ltd. v. Atchley*, 144 S. Ct. 2675 (2024) ......................................12

*Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022)..............2, 3, 6, 7, 8,
9, 11, 12, 13

*Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856 (D.C. Cir. 2022),
*cert. denied*, 144 S. Ct. 280 (2023)............................................................8, 13

*Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685
(7th Cir. 2008) ....................................................................................6, 9

*Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) .......................................................4

\* *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ................................6, 7, 9, 11

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .........................................9

*Keren Kayemeth LeIsrael – Jewish Nat'l Fund v. Education for a
Just Peace in the Middle E.*, 66 F.4th 1007 (D.C. Cir. 2023),
*cert. denied*, 144 S. Ct. 713 (2024)..................................................................13

*Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667 (D.C. Cir. 2023) ....................................13

*Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017),
*vacated and remanded sub nom. Opati v. Republic of Sudan*,
590 U.S. 418 (2020)..........................................................................6, 9, 10

*People v. Brophy*, 120 P.2d 946 (Cal. Ct. App. 1942)..............................................4

\* *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) ....................................1, 2, 3, 4, 5, 6,
8, 9, 10, 11, 12, 13

*United States v. Peoni*, 100 F.2d 401 (2d Cir. 1938) ................................................5

Authorities principally relied upon are designated by an asterisk (\*).

**STATUTES**

Antiterrorism Act, 18 U.S.C. § 2331 *et seq.* ............................................1, 2, 5, 6, 13

    18 U.S.C. § 2333(d)(2) ........................................................................3

    18 U.S.C. § 2339A(a) ..........................................................................9

    18 U.S.C. § 2339C(a)(1) ......................................................................9

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222,
    130 Stat. 852 (2016) .....................................................................13, 14

    § 2(a)(6), 130 Stat. 852 ....................................................................13

    § 2(b), 130 Stat. 853.....................................................................13, 14

Sudan Claims Resolution Act, Pub. L. No. 116-260, div. FF, tit. XVII,
    § 1706(a)(1), 134 Stat. 1182, 3291, 3294 (2020) ...........................13

**OTHER MATERIALS**

Br. for the United States as Amicus Curiae, *AstraZeneca UK Ltd.
    v. Atchley*, No. 23-9 (U.S. May 21, 2024) ......................................12

Br. for the United States as Amicus Curiae in Supp. of Reversal,
    *Twitter, Inc. v. Taamneh*, No. 21-1496 (U.S. Dec. 6, 2022) .........13

Br. for the United States as *Amicus Curiae* Supporting Affirmance,
    *Boim v. Quranic Literacy Inst.*, Nos. 01-1969 & 01-1970
    (7th Cir. Nov. 14, 2001) ..................................................................5

# GLOSSARY

| | |
|---|---|
| Act | Antiterrorism Act, 18 U.S.C. § 2331 *et seq.* |
| Amendment | Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016) |
| Corruption Br. | Brief for *Amici Curiae* Iraq Anti-Corruption Experts in Support of Plaintiffs-Appellants, *Atchley v. AstraZeneca UK Ltd.*, No. 20-7077 (D.C. Cir. Jan. 19, 2021) |
| Defs. Supp. Br. | Supplemental Brief for Defendants-Appellees, *Atchley v. AstraZeneca UK Ltd.*, No. 20-7077 (D.C. Cir. Aug. 26, 2024) |
| Ministry | Iraq's Ministry of Health |
| Professors Br. | Supplemental Brief of Law Professors as *Amici Curiae* in Support of Plaintiffs-Appellants, *Atchley v. AstraZeneca UK Ltd.*, No. 20-7077 (D.C. Cir. Sept. 9, 2024) |
| Reply Br. | Reply Brief for Plaintiffs-Appellants, *Atchley v. AstraZeneca UK Ltd.*, No. 20-7077 (D.C. Cir. Apr. 23, 2021) |
| Senators Br. | Brief of Eight United States Senators as *Amici Curiae* in Support of Plaintiffs-Appellants, *Atchley v. AstraZeneca UK Ltd.*, No. 20-7077 (D.C. Cir. Apr. 23, 2021) |
| Supp. Br. | Supplemental Brief for Plaintiffs-Appellants Joshua Atchley, *et al.*, *Atchley v. AstraZeneca UK Ltd.*, No. 20-7077 (D.C. Cir. Aug. 26, 2024) |

U.S. *Boim* Br.

Brief for the United States as *Amicus Curiae* Supporting Affirmance, *Boim v. Quranic Literacy Inst.*, Nos. 01-1969 & 01-1970 (7th Cir. Nov. 14, 2001)

U.S. Br.

Brief for the United States as Amicus Curiae, *AstraZeneca UK Ltd. v. Atchley*, No. 23-9 (U.S. May 21, 2024)

U.S. *Twitter* Br.

Brief for the United States as Amicus Curiae in Support of Reversal, *Twitter, Inc. v. Taamneh*, No. 21-1496 (U.S. Dec. 6, 2022)

**INTRODUCTION**

The complaint alleges that Defendants knowingly bribed the terrorists who ran Iraq's Ministry of Health. That conduct remains as culpable as it sounds. So Defendants use *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), as an excuse to reargue the facts. Their latest brief deploys the same techniques – misreading some allegations, ignoring others, and citing internet research – that this Court already rejected. *Twitter* supports none of them. It clarified that a social-media platform's passive failure to expel terrorists does not, without more, culpably aid the terrorists' attacks. As pleaded, Plaintiffs' claims are in another universe.

Defendants also rip *Twitter*'s common-law discussion from its context. Its key feature – what made the benign intent and non-existent nexus important there – was the absence of any "affirmative misconduct." *Id*. at 500. Without such misconduct, a plaintiff suing a passive platform must plead extra-culpable scienter – perhaps even intent. But active-assistance claims are different. Such claims require neither terroristic intent nor a direct nexus between each fungible dollar given and each individual attack committed. Requiring either here would erase the active-passive distinction at *Twitter*'s core. Indeed, on Defendants' reading, nearly everything in the Supreme Court's lengthy opinion was superfluous.

Defendants urge these requirements because they are impossible to meet. Every meaningful defendant in every Antiterrorism Act case funds terrorists out of greed, and none earmarks its donations for individual attacks. Defendants and

their amici want a rule shielding them all from liability: they would bar victims from ever suing any profit-seeking entity that gives fungible dollars to terrorists, no matter how heinous. But that is not the statute Congress enacted. If the Act is to mean anything, it must mean at least that companies cannot bribe terrorists they know are murdering Americans down the street. *Twitter* did not hold otherwise.

**ARGUMENT**

**I.    THE COURT SHOULD REAFFIRM ITS PRIOR JUDGMENT**

**A.    *Twitter* Does Not Support Rewriting The Complaint**

The complaint details years of "conscious, voluntary, and culpable" behavior. *Twitter*, 598 U.S. at 493. Defendants and their amici again resist that conclusion by pressing "an untenably skeptical reading of the complaint." *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 228 (D.C. Cir. 2022). From their first page, Defendants pretend they merely supported a U.S. ally, watching helplessly while terrorists "diverted" their goods "to fund attacks." Defs. Supp. Br. 1. They distance themselves from their terrorist counterparty by cleaving the Ministry from "Jaysh al-Mahdi as an entity." *Id.* at 11 n.3. And they shift blame to the U.S. government, which they say told them to "support[] the Ministry." *Id.* at 13.

The complaint contradicts these assertions, as this Court explained the last time Defendants made them. *See Atchley*, 22 F.4th at 228-29. That is just as true after *Twitter* as it was before. *Twitter* addressed the law of aiding-abetting, not the rules for reading complaints. And read accurately, *see* Supp. Br. 1-7, the complaint

2

alleges that Defendants "provided illegal support to the terrorist acts that harmed [Plaintiffs]," *Atchley*, 22 F.4th at 209. If *Twitter* foreclosed those allegations as pleaded, Defendants would not have to keep rewriting them.

The attempted rewrite highlights the need for discovery. Last time, this Court encouraged "evidentiary development" on Defendants' dubious factual narrative. *Id*. at 230. Nearly three years later, none has occurred. Defendants instead obtained an 18-month (and counting) discovery stay, allowing them and their amici to keep asserting facts in briefs without adducing evidence or exposing any witness to cross-examination. Doc. No. 2063490, at 3-5. And having again thwarted Plaintiffs' efforts "to obtain discovery and test the evidence in the adversarial process," *Atchley*, 22 F.4th at 210, Defendants now urge (at 13-14) the Court to find them non-culpable by "tak[ing] judicial notice" of their internet research. The Court should re-decline the invitation and remand for discovery.

**B.    Defendants' Secondary-Liability Arguments Misread *Twitter***

**1.    Intent**

**a.**    Defendants argue (at 9) that *Twitter* "foreclos[es] liability" for anyone who lacks terroristic "intent." But *Twitter* did not supplant the traditional rule that civil aiding-abetting liability requires only knowledge. Supp. Br. 18-21. That rule tracks the statute's text, which uses "knowingly." 18 U.S.C. § 2333(d)(2).

Had the Supreme Court wanted to adopt an atextual intent requirement, it would have written a shorter opinion. After all, the social-media platforms in *Twitter* all harbored an "undisputed lack of intent to support ISIS." 598 U.S. at 504. If that were as decisive as Defendants now say, the Court could have simply disposed of the case on that basis. But it instead discussed the companies' intent – relevant, but hardly dispositive – alongside many other fact-bound considerations. *See id*. at 498-506. The result was a sliding-scale approach under which substantiality and scienter work "in tandem." *Id*. at 491-92. Courts cannot balance scienter on a sliding scale if one end of the scale always requires specific intent.

The cases Defendants cite (at 8-9) do not show otherwise. Those cases, like *Twitter* itself, held that routine communication providers were not culpable for merely knowing that some "customers were using the[ir] service for illicit ends." *Twitter*, 598 U.S. at 501 (citing *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003); *People v. Brophy*, 120 P.2d 946, 956 (Cal. Ct. App. 1942)). Each involved the sort of passive inaction – a failure to stop wrongdoers from using the internet, *see GTE*, 347 F.3d at 659, or talking on the phone, *see Brophy*, 120 P.2d at 956 – for which the common law demands "more scienter," *Twitter*, 598 U.S. at 491-92. Intent may be needed to make the "strong showing" such passive-inaction claims demand. *Id*. at 500; *see Amazon Servs. LLC v. USDA*, 109 F.4th 573, 582-83 (D.C.

Cir. 2024) (citing intent in "passive nonfeasance" case about "routine business service").[1]  But it is unnecessary in active-misconduct cases like this one.

*Twitter* derived its culpability standard from civil common-law cases that did not require specific intent.  Supp. Br. 18-19 & n.3 (citing cases).  Rather than grapple with those cases, Defendants pull an intent element (at 7-10) from *Twitter*'s introductory summary of the "criminal law."  598 U.S. at 489-90.  True, *Twitter* surveyed some criminal cases that described an aider-abettor as "seek[ing] by his action to make [the principal crime] succeed."  *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938); *see* Defs. Supp. Br. 1, 5, 8 n.2, 22 (reciting this formulation).  But the *civil* cases *Twitter* cited did not so require, *see* 598 U.S. at 490-91, and the Court saw "daylight" between "the rules for aiding and abetting in criminal and tort law," *id*. at 493.  *Peoni*, for example, addressed only "criminal liability" and stressed that the outcome would have differed "[i]f this were a civil case."  100 F.2d at 402.  The government thus has long cited *Peoni* to support a "distinction between criminal and civil aiding/abetting liability," describing the latter as "broader than its criminal counterpart."  U.S. *Boim* Br. 17.

The government's distinction makes good sense in terrorist-funding cases.  The Act reflects Congress's aim of curtailing terrorist financing, Supp. Br. 13-14,

---

[1] *Amazon* is also off-point because there was "no indication that Amazon was aware of the violations" it was accused of aiding.  109 F.4th at 582.

and importing an intent requirement from the criminal law would thwart that aim, *id*. at 20-21; *see* Senators Br. 8-9.  That is why this Court has never required "specific intent" in lawsuits against "material supporters of terrorism."  *Owens v. Republic of Sudan*, 864 F.3d 751, 799 (D.C. Cir. 2017) ("*Owens III*"), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 590 U.S. 418 (2020).  To "'require proof that a defendant *intended* that his contribution be used for terrorism would as a practical matter eliminate liability'" for all terrorist funders.  *Id*. (quoting *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 698-99 (7th Cir. 2008) (en banc)) (cleaned up).  Such a requirement would all but expunge secondary liability from the Act, confining liability to the already-liable terrorists themselves.  Professors Br. 16.  *Twitter* does not mandate that outcome.

**b.**     Whatever their subjective intent, Defendants' state of mind was culpable enough to warrant liability.  Supp. Br. 9-18.  One reason, as Plaintiffs noted (at 12), is that common-law courts often find the requisite culpability when a defendant aids the wrongdoer under "'unusual circumstances.'"  *Atchley*, 22 F.4th at 221 (quoting *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983)); *see* Professors Br. 12-13.

Defendants say (at 14-15) their bribes were not unusual because corruption was baked into the Ministry's "standard practice."  But corrupt conduct does not become legitimate through repetition.  The Ministry's standard practice was designed to extract illegal revenue for whoever was in charge.  JA111-13, 150-51,

6

154-63 (¶¶ 48-51, 137-138, 145-164). Johnson & Johnson thus admitted that it acted criminally in paying the same bribes to Saddam-era Ministry officials. JA207-09 (¶¶ 262-265). And Defendants orchestrated "Off-the-Books Payoff[s]" that were not even part of the Ministry's standard practice. JA149-50 (¶ 136). Defendants have no answer for their off-the-books payoffs, so they ignore them.

Defendants also elide the most unusual part of their conduct: that they directed "corrupt payments and valuable gifts to Jaysh al-Mahdi" while "aware of Jaysh al-Mahdi's command of the Ministry." *Atchley*, 22 F.4th at 209; *see* JA118-35 (¶¶ 63-104). A company that negotiates with terrorists, amid terrorist weapons and propaganda, behaves "in an unusual way." *Halberstam*, 705 F.2d at 487. Such conduct does not become less culpable just because the payments might have been less culpable if made to someone else. Linda Hamilton could have performed "secretarial work" for someone besides a burglar; this Court surely would have viewed her conduct differently if she had. *Id*. at 475, 487. But her clerical acts – perhaps "neutral standing alone" – became culpable "in the context of the enterprise they aided." *Id*. at 488. The context here was even worse.

Defendants also suggest (at 16) that for "unusual activity" to count, it must be "directly and inexorably tied to the principal wrong." The complaint meets that standard. It details how contracting corruption – in Iraq broadly, and the Ministry especially – fueled terrorist attacks against Americans. JA118-19, 167-69 (¶¶ 64-

65, 172-174); *see* Corruption Br. 16-21 (former officials showing why corruption was "second insurgency").  The corrupt, off-book nature of Defendants' bribes was what made them so "easy to disappear" for terrorist ends.  JA147 (¶ 132).

Even so, Defendants overreach in demanding (at 16-17) that "the unusual manner of the defendant's conduct" be "part and parcel of the principal wrong."  That is another version of the "directness requirement" this Court already rejected.  *Atchley*, 22 F.4th at 225.  Just as the statute does not require "direct assistance" to terrorists, *id.*, neither does it demand some "direct[] and inexorabl[e]" tie to terrorism, Defs. Supp. Br. 16.  *Twitter* did not hold otherwise:  it too declined to require "a direct nexus between the defendant's acts and the tort."  598 U.S. at 506; *see id*. at 497-98.  Nor need this Court adopt a "per se rule" under which "atypical" services are "always" culpable.  Defs. Supp. Br. 17.  If another case involved "atypical transactions" having "nothing to do with terrorism," *id*., liability would remain unwarranted, *see*, *e.g.*, *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856 (D.C. Cir. 2022).  But when a company sends atypical bribes to a "known terrorist group" like Jaysh al-Mahdi, *Atchley*, 22 F.4th at 227, its culpability is manifest.

### 2.    Nexus

Plaintiffs also plead a sufficient nexus between the aid and the terrorist attacks that harmed them.  Supp. Br. 21-24.  *Twitter* requires a defendant's aid to assist "a *foreseeable* terror attack," *Twitter*, 598 U.S. at 502 (emphasis added),

and this Court already held that the attacks against Plaintiffs foreseeably resulted from Defendants' bribes, *see Atchley*, 22 F.4th at 225-31.

Defendants erase (at 22-23) foreseeability from the inquiry by demanding "conscious and culpable participation in specific attacks." But a participate-in-specific-attacks rule resurrects the "strict nexus" standard *Twitter* rejected. 598 U.S. at 497. Defendants need not have known "all particulars" of Jaysh al-Mahdi's "plan," *id*. at 495, such as the individual victims the terrorists murdered. Rather, the attacks need only have been "'a foreseeable risk'" of the crimes Defendants aided. *Id*. at 496 (quoting *Halberstam*, 705 F.2d at 488); *see* Professors Br. 13-15. They were. Defendants aided these foreseeable attacks by supplying Jaysh al-Mahdi with resources to finance them. JA163-77 (¶¶ 165-187). Relatedly, Defendants aided Jaysh al-Mahdi members in collecting money for terrorism. JA135-39 (¶¶ 105-113). Those money-collection acts themselves were criminal, *see* 18 U.S.C. §§ 2339A(a), 2339C(a)(1), because terrorist fundraising foreseeably risks terrorist attacks, *see Owens III*, 864 F.3d at 794-99; *Boim*, 549 F.3d at 690-91. So Defendants' choice to aid the former makes them liable for the latter.

Defendants' contrary rule would extinguish liability for terrorist funders. Because "[m]oney is fungible," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010), a terrorist financer can always deny a direct link from any one dollar given to any one bomb used. For instance, an al-Qaeda donor could personally

give Osama bin Laden's successor $10 million and still escape liability, so long as the fungible dollars donated could not be traced downstream to any one al-Qaeda weapon. That is why this Court has long rejected Defendants' dollars-to-bombs "direct traceability" test. *Owens III*, 864 F.3d at 799. Instead, a terrorist funder culpably participates in the foreseeable attacks its resources help finance. *Twitter*'s nexus discussion – about passive platforms, not active funders, *see* 598 U.S. at 499-503 – does not hold otherwise. Supp. Br. 22 (citing post-*Twitter* cases).

Nor do Plaintiffs' claims carry the "expansive scope" *Twitter* criticized. 598 U.S. at 501; *cf.* Defs. Supp. Br. 20-21. This Court need not hold that every donation to a terrorist group aids "each and every [of the group's] terrorist act[s] committed anywhere in the world." *Twitter*, 598 U.S. at 501. The claims here are narrower: Defendants paid identified terrorists *in Iraq*, who targeted Americans *in Iraq*. JA123-39 (¶¶ 78-113). In fact, Defendants finalized their payments mere blocks from where many Plaintiffs died. JA127, 170 (¶¶ 89, 180). And the locus of their payments – the Ministry – was a vital hub for Jaysh al-Mahdi's terrorist operations in the areas where the attacks occurred. JA130-34, 238-39, 269-73 (¶¶ 98-103, 338, 403). Whether Defendants "buil[t] Ministry facilities" used in those attacks, Defs. Supp. Br. 23, misses the point: the Ministry's role in providing "insurgent logistics flow" amplifies the link between funds paid at the Ministry and

10

attacks enabled by the Ministry.  JA794.  That link is tighter – geographically,

temporally, and practically – than the indeterminate nexus *Twitter* rejected.

Defendants' "aid to a known terrorist group" therefore makes them liable for

at least the "definable subset of terrorist acts" the complaint alleges.  *Twitter*, 598

U.S. at 502.  But even without such a nexus, Defendants' aid to Jaysh al-Mahdi's

terrorist enterprise was "so systemic" that it plausibly assisted "every wrongful act

committed by that enterprise."  *Id*. at 496.  Although Defendants insist (at 21) they

were not "pervasively and systemically involved" with terrorists, their massive

bribes show otherwise, Supp. Br. 23-24.  "*Halberstam* itself" was the Supreme

Court's example of a case with "systemic" aid, *Twitter*, 598 U.S. at 496, and

Defendants here were more deeply involved in wrongdoing than Hamilton was

there, *see Atchley*, 22 F.4th at 223-24.  Hamilton was a "passive but compliant"

bookkeeper whose "acts were neutral standing alone."  *Halberstam*, 705 F.2d at

474, 488.  Those acts never gave "overwhelming" assistance to Welch's burglaries,

though their effect "added up over time."  *Id*. at 488.  Defendants' corrupt

contributions were worse.  Indeed, Jaysh al-Mahdi was so dependent on payments

through the Ministry that it was called "The Pill Army."  *Atchley*, 22 F.4th at 213.

## C.     The Court Should Reinstate Its Direct-Liability Rulings

*Twitter* does not affect the Court's direct-liability rulings.  Supp. Br. 24.

Because no direct-liability claim was before the Supreme Court, *see* 598 U.S.

at 482 n.4, *Twitter* had no occasion to address the proximate-cause or act-of-international-terrorism elements.  This Court should not revisit them.  Contrary to Defendants' suggestion (at 28), Plaintiffs do allege – as this Court already held – that Defendants' bribes foreseeably caused "the specific attacks that injured the plaintiffs."  *See Atchley*, 22 F.4th at 212-13 ("attacks on Americans, including plaintiffs"), 225 ("attacks against plaintiffs"), 226 ("events leading to plaintiffs' injuries"), 227 ("attacks that plaintiffs suffered"; "plaintiffs' injuries"), 229 ("acts of terrorism that harmed plaintiffs").  Defendants' quarrel (at 27-28) is with the Court's factual inferences, not its legal rule.  *See* U.S. Br. 22.

*Twitter* has even less bearing on the international-terrorism element.  This Court previously "le[ft] to the district court" to decide that issue on remand. *Atchley*, 22 F.4th at 238.  Nothing supports reversing course now.  Defendants' arguments on this point (at 28-31) are not ones "for further consideration in light of *Twitter*," *AstraZeneca UK Ltd. v. Atchley*, 144 S. Ct. 2675, 2675-76 (2024); they ask the Court to backtrack to decide an unrelated issue.  It should not.  If it does, it should reject Defendants' position for the reasons given before.  Reply Br. 23-24.

## II.    DEFENDANTS' POLICY ARGUMENTS STILL LACK MERIT

Defendants' humanitarian appeal (at 23-26) is even less persuasive.  The Court already rejected the same arguments, explaining that its last opinion was "a far cry" from punishing charities that "provid[e] assistance to a non-sanctioned

organization if the aid is later stolen, diverted, or extorted" by terrorists. *Atchley*, 22 F.4th at 228. *Twitter* has not improved Defendants' policy predictions. For companies that operate in "Gaza" or "Yemen," Defs. Supp. Br. 3, 24-25, the Act merely "encourage[s]" them "to be diligent in guarding against actions that support terrorism," U.S. *Twitter* Br. 1. Defendants cite no evidence that such diligence is onerous, much less impossible. Regardless, forcing corporations to tread carefully before shoveling money to terrorists like "Hamas," Defs. Supp. Br. 26, promotes Congress's intent. The political branches' "long-standing policy" is that "civil lawsuits against those who support, aid and abet, and provide material support for international terrorism serve the national security interests of the United States."[2]

Such lawsuits hardly risk the humanitarian calamities Defendants invent. In one recent decision, this Court affirmed dismissal of claims against a nonprofit that funded a terrorist-adjacent group "engage[d] in lawful advocacy," rejecting any analogy to this case. *Keren Kayemeth LeIsrael – Jewish Nat'l Fund v. Education for a Just Peace in the Middle E.*, 66 F.4th 1007, 1018 (D.C. Cir. 2023). And in two others, the Court dismissed claims against banks that helped their customers evade U.S. counterterrorism sanctions. *See Bernhardt*, 47 F.4th at 862-63; *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 675 (D.C. Cir. 2023). All three opinions cited

---

[2] Sudan Claims Resolution Act, Pub. L. No. 116-260, div. FF, tit. XVII, § 1706(a)(1), 134 Stat. 1182, 3291, 3294 (2020); *see* Amendment § 2(a)(6), (b).

this case, yet they refused to extend liability to the very situations Defendants hypothesize. If even deliberate sanctions evasion fails to create liability under this Court's last opinion, legitimate actors have nothing to fear.

Conversely, malicious actors have much to gain from Defendants' theory. Senators Br. 3-9. Dismissing this case would require setting the liability bar so high that no corporate misconduct could ever meet it. So multinational conglomerates would remain free to funnel money to terrorists around the world, safe from liability so long as they acted out of greed and avoided earmarking their dollars for individual attacks. Meanwhile, the victims would be left with pointless lawsuits against actors like Muqtada al-Sadr and Hezbollah – perhaps liable in theory, but judgment-proof and out of reach in practice. That is not what Congress wanted. It enacted this statute "to provide civil litigants with the broadest possible basis" "to seek relief against persons" or "entities" that give terrorists "material support." Amendment § 2(b). Defendants' cramped liability rule flouts that intent.

## CONCLUSION

The Court should reinstate its judgment.

Respectfully submitted,

 /s/ *Joshua D. Branson*
DAVID C. FREDERICK
JOSHUA D. BRANSON
ANDREW E. GOLDSMITH
DEREK C. REINBOLD
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dfrederick@kellogghansen.com
jbranson@kellogghansen.com
agoldsmith@kellogghansen.com
dreinbold@kellogghansen.com

*Counsel for Plaintiffs-Appellants*
September 16, 2024                    *Joshua Atchley, et al.*

15

# CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(g), that this brief complies with the 3,250-word limit that this Court ordered on July 26, 2024 (Doc. No. 2066808), because, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), the brief contains 3,248 words.

I further certify that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced typeface (Times New Roman, 14 point).

　/s/ *Joshua D. Branson*
Joshua D. Branson

September 16, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 16, 2024, I caused to be filed electronically the Supplemental Reply Brief for Plaintiffs-Appellants Joshua Atchley, *et al.*, with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Joshua D. Branson*
Joshua D. Branson