# In the United States Court of Appeals for the District of Columbia Circuit

———————

JOSHUA ATCHLEY, ET AL.,
*Plaintiffs-Appellants,*

*v.*

ASTRAZENECA UK LIMITED, ET AL.,
*Defendants-Appellees.*

———————

Appeal from the United States District Court for the District of Columbia
No. 1:17-cv-02136-RJL (Hon. Richard J. Leon)

———————

## SUPPLEMENTAL REPLY BRIEF FOR DEFENDANTS-APPELLEES
———————

KANNON K. SHANMUGAM
JEH C. JOHNSON
WILLIAM T. MARKS
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
  2001 K Street, N.W.
  Washington, DC 20006
  (202) 223-7300

*Counsel for Johnson & Johnson, Cilag GmbH International, Ethicon Endo-Surgery, LLC, Ethicon, Inc., Janssen Ortho LLC, Janssen Pharmaceutica NV, Johnson & Johnson (Middle East) Inc., and Ortho Biologics LLC*

LISA S. BLATT
  *Counsel of Record*
CHRISTOPHER N. MANNING
SARAH M. HARRIS
MELISSA B. COLLINS
AARON Z. ROPER
KRISTEN A. DEWILDE
WILLIAMS & CONNOLLY LLP
  680 Maine Avenue SW
  Washington, DC  20024
  (202) 434-5000
  lblatt@wc.com

*Counsel for Pfizer Inc., Pfizer Pharmaceuticals LLC, Pfizer Enterprises SARL, Pharmacia & Upjohn Company LLC, and Wyeth Pharmaceuticals LLC*

JESSICA S. CAREY
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019-6064*
  *United States*
  *(212) 373-3000*

*Counsel for Johnson & Johnson,
Cilag GmbH International, Ethicon
Endo-Surgery, LLC, Ethicon, Inc.,
Janssen Ortho LLC, Janssen
Pharmaceutica NV, Johnson &
Johnson (Middle East) Inc., and
Ortho Biologics LLC*


JOHN B. BELLINGER III
DAVID J. WEINER
ARNOLD & PORTER
KAYE SCHOLER LLP
  *601 Massachusetts Ave., N.W.*
  *Washington, DC 20001*
  *(202) 942-5000*

ROBERT REEVES ANDERSON
ARNOLD & PORTER
KAYE SCHOLER LLP
  *1144 Fifteenth Street,*
  *Suite 3100*
  *Denver, CO 80202-1370*
  *(303) 863-2325*

*Counsel for GE Healthcare USA
Holding LLC, GE Medical Systems
Information Technologies, Inc., and
GE Medical Systems Information
Technologies GmbH*

DAVID M. ZIONTS
S. CONRAD SCOTT
LELIA A. LEDAIN
COVINGTON & BURLING LLP
  *One City Center*
  *850 Tenth Street, N.W.*
  *Washington, DC 20001*
  *(202) 662-5312*

*Counsel for F. Hoffmann-La Roche
Ltd*


DAVID W. BOWKER
DONNA M. FARAG
WILMER CUTLER PICKERING
HALE AND DORR LLP
  *2100 Pennsylvania Ave., NW*
  *Washington, DC 20037*
  *(202) 663-6000*

*Counsel for Genentech, Inc. and
Hoffmann-La Roche Inc.*


PAUL S. MISHKIN
DAVID B. TOSCANO
CRAIG T. CAGNEY
DAVIS POLK & WARDWELL LLP
  *450 Lexington Avenue*
  *New York, NY 10017*
  *(202) 450-4292*

*Counsel for AstraZeneca
Pharmaceuticals LP and
AstraZeneca UK Limited*

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................1

ARGUMENT ........................................................................................3

I.    The Aiding-and-Abetting Claims Fail.......................................3

    A.    Plaintiffs Fail to Allege Conscious and Culpable
        Participation in Attacks.................................................3

    B.    Plaintiffs Fail to Allege Any Nexus to Specific Attacks...............13

    C.    Plaintiffs' Theory Would Deter International Aid and
        Reconstruction.............................................................15

II.    The Direct-Liability Claims Fail ................................................17

CONCLUSION....................................................................................18

I

# TABLE OF AUTHORITIES

Page

**CASES**

*ABF Cap. Mgmt. v. Askin Cap. Mgmt.*,
   957 F. Supp. 1308 (S.D.N.Y. 1997)......................................................................12

*Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*,
   219 F.3d 519 (6th Cir. 2000)..............................................................................12

\* *Amazon Servs. LLC v. USDA*, 109 F.4th 573 (D.C. Cir. 2024) ...............1, 4, 6

*Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204 (D.C. Cir. 2022)...................5, 13

*Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856 (D.C. Cir. 2022) .....10, 16

*Bonacasa v. Standard Chartered PLC*,
   2023 WL 7110774 (S.D.N.Y. Oct. 27, 2023)......................................................11

*Camp v. Dena*, 948 F.2d 455 (8th Cir. 1991) .......................................................8

*Direct Sales Co. v. United States*, 319 U.S. 703 (1943)................................... 7-8

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) .................................5, 8, 14

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021)........11

*King v. Habib Bank Ltd.*, 2022 WL 4537849 (S.D.N.Y. Sept. 28, 2022),
   *reconsideration denied*, 2023 WL 8355359 (S.D.N.Y. Dec. 1, 2023)...........11

*Lawrence v. Chater*, 516 U.S. 163 (1996)..............................................................1

\* *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023)................................... 1-7, 9-17

*United States v. Peoni*, 100 F.2d 401 (2d Cir. 1938) .........................................10

*Woods v. Barnett Bank of Ft. Lauderdale*,
   765 F.2d 1004 (11th Cir. 1985)............................................................................8

---

\* Authorities upon which we chiefly rely are marked with asterisks.

Page

Cases—cont'd:

*Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301 (E.D.N.Y. 2023) ................11, 15

**STATUTES**

18 U.S.C.
§ 2333(d)(2) ................................................................................12
§ 2339A ......................................................................................12
§ 2339B note .............................................................................5

**OTHER AUTHORITY**

Brief for the United States, *Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023) (No. 21-1496) .....................................9

*Terrorist Organizations*, CIA World Factbook,
https://tinyurl.com/4k4e2b79 ...........................................16

**INTRODUCTION**

Plaintiffs' insistence (at 17-18) that *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023)*,* necessitates only "minor," "cosmetic changes" to this Court's previous opinion defies credulity. This Court recently explained (in a case plaintiffs barely acknowledge) that *Taamneh* resolved this Court's previous "uncertainty on whether the common law of civil aiding-and-abetting liability requires a culpable mind." *Amazon Servs. LLC v. USDA*, 109 F.4th 573, 580 (D.C. Cir. 2024) (citation omitted). Now, the answer is resoundingly yes. *Id.* As the United States told the Supreme Court, this Court's previous decision did not follow "the demanding standard that *Taamneh* subsequently articulated." U.S. Br. 15. The Supreme Court's subsequent vacatur reflects "a reasonable probability" that the decision "rests upon a premise that [this Court] would reject if given the opportunity for further consideration." *Lawrence v. Chater*, 516 U.S. 163, 167 (1996).

With that opportunity, this Court should affirm the dismissal of plaintiffs' complaint. Plaintiffs fail to allege, as *Taamneh* requires, that any defendant, let alone all 21, "consciously and culpably participated in" each "act of international terrorism that injured the plaintiffs" "in such a way as to help make it succeed." 598 U.S. at 497 (cleaned up). Plaintiffs instead allege that

1

some defendants manufactured medical goods and others sold those goods to the Sadrist-led Iraqi Ministry of Health.  Some defendants allegedly acted corruptly because they, consistent with the Ministry's "regular," "routine[]," "standard practice," allegedly "deliver[ed] 'free goods' to MOH" (the Ministry) or paid "commissions" to "individual Sadrist officials."  JA140-41, 143, 148-50, 153-55, 159-60 (¶¶118, 120, 123, 134, 136, 142-44, 146, 157).  "Jaysh al-Mahdi agents" then allegedly "diverted Ministry resources to terrorist ends," and defendants allegedly "knew or recklessly disregarded" that risk.  JA99, 170 (¶¶5, 179-80).  Plaintiffs allege that defendants acted to "grow their market share" in Iraq, not to culpably participate in terrorism.  JA139 (¶115).  And plaintiffs make no attempt to satisfy their obligation under *Taamneh* to tie defendants' conduct to specific attacks.

Plaintiffs (at 1, 23) remarkably rewrite their complaint as alleging that defendants helped "slaughter[] American soldiers" and "bribed Jaysh al-Mahdi terrorists in the very building the terrorists used to orchestrate attacks," as if defendants handed money to individual attackers and urged them to commit violence.  Overheated rhetoric is no substitute for plausible allegations of conscious, culpable participation in terrorism, much less *specific terrorist acts*.  And, contrary to plaintiffs' suggestion (at 2, 23), *Taamneh* does

not impose across-the-board liability for every "foreseeable" attack if defendants allegedly engaged in unrelated wrongdoing (here, purported corruption while contracting with a foreign-government ministry).

Plaintiffs' view of the Anti-Terrorism Act would be unrecognizable to the Court that unanimously decided *Taamneh*. It also risks "significant adverse consequences," Chamber Br. 5, 16, and would "imperil vital humanitarian work," Charity Br. 15. This Court should not read the Anti-Terrorism Act to deter companies and nonprofits from answering calls for aid and reconstruction in conflict areas like Gaza and Yemen, lest they too be accused of aiding and abetting or committing terrorism.

## ARGUMENT

## I. The Aiding-and-Abetting Claims Fail

### A. Plaintiffs Fail to Allege Conscious and Culpable Participation in Attacks

Plaintiffs' allegations that defendants undertook economically motivated, standard-practice transactions with the Iraqi Health Ministry come nowhere close to alleging conscious and culpable participation in terrorist attacks, as *Taamneh* requires. Defs. Supp. Br. 7-14.

1. Inflammatory rhetoric aside, plaintiffs do not dispute that defendants lacked any intent to support terrorism. Plaintiffs (at 21) confirm that

defendants' alleged "intent" was "to obtain corrupt contracts." Under *Taamneh*, "'lack of intent to support' the wrongdoing"—*i.e.*, terrorism—carries "significant 'weight'" against liability. *Amazon*, 109 F.4th at 583 (quoting 598 U.S. at 504); Defs. Supp. Br. 9-10.

That lack of alleged culpable intent should end this case given how attenuated plaintiffs' theory is. Plaintiffs offer a multistep chain of allegations in which some defendants manufactured medical goods and others sold those goods and paid commissions to Ministry officials who, in turn, allegedly diverted those resources to Jaysh al-Mahdi's general operations. Defs. Supp. Br. 10-12. Plaintiffs allege *no* link between any defendant and any specific attack. *Id.* at 20-21. As *Taamneh* held, "the more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through *intentional* aid that substantially furthered the tort." 598 U.S. at 506 (emphasis added).

Further, plaintiffs allege that defendants interacted only with Ministry officials, not the U.S.-designated foreign terrorist organization, Hezbollah. U.S. Br. 19-20; Defs. Supp. Br. 12-13. Plaintiffs (at 27-29) accuse the United States of improperly demanding "a Hezbollah-knowledge requirement." But the United States' point was more fundamental: The absence of allegations

that defendants knew "about Hezbollah's reliance on Jaysh al-Mahdi's use of Ministry resources" would weigh against finding that any defendant consciously and culpably participated in any attack. U.S. Br. 19-20. That conclusion should be especially clear because the United States "encouraged private investment in" "rebuilding Iraq's healthcare system." U.S. Br. 4; Defs. Supp. Br. 13-14. Terrorism designation identifies organizations "so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct." 18 U.S.C. § 2339B note. Aid to a U.S.-backed Health Ministry allegedly infiltrated by a non-designated militia is far removed from culpable participation.

2. Plaintiffs (at 15-17) mischaracterize this Court's application of the *Halberstam* factors, including "state of mind," as "just another way of describing" *Taamneh*'s "'conscious and culpable' standard." This Court stated that the "state of mind" "factor favors aiding-and-abetting liability because defendants' assistance was knowingly provided with a *general awareness* that it supported the terrorist acts," not because defendants consciously and culpably participated in those acts. *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 223 (D.C. Cir. 2022) (emphasis added); *see* Defs. Supp. Br. 6; Chamber Br. 10.

After *Taamneh*, "general awareness" of defendants' alleged "role in [terrorists'] overall scheme" is insufficient for culpability and "undisputed lack of intent to support" terrorism carries "much greater weight." 598 U.S. at 503-04. Far from a "minor change[]" that "hardly affect[s] the outcome," Pls. Supp Br. 17, *Taamneh*'s conscious-and-culpable-participation requirement is the "conceptual core" of aiding-and-abetting liability. *See Amazon*, 109 F.4th at 580 (quoting 598 U.S. at 493).

3. Plaintiffs (at 9-15, 18-21) read *Taamneh* as adopting a "sliding-scale approach," whereby courts decide if defendants' alleged acts were "blameworthy enough to state a claim." And plaintiffs point to various factors—unusual transactions, affirmative conduct, financing, and the heinousness of terrorism—as seemingly sufficient for aiding-and-abetting liability. But *Taamneh* cautions against overwrought tests that "obscure[] the essence of aiding-and-abetting liability": "Did defendants consciously, voluntarily, and culpably participate in or support the relevant wrongdoing?" 598 U.S. at 503, 505. Plaintiffs' complaint yields one answer: no.

a. **Unusual Circumstances**. Plaintiffs (at 12) argue that the defendants' alleged bribes are "unusual" and thus sufficient to make defendants' conduct culpable.

6

But plaintiffs ignore their own allegations that defendants' alleged transactions followed longstanding Ministry "standard practice." Defs. Supp. Br. 14-15. Moreover, plaintiffs (at 1-2, 9) misread *Taamneh* as requiring only "'conscious, voluntary, and culpable' conduct" *of some sort*, rather than "conscious[] and culpabl[e] participat[ion] *in the tort at issue*," *i.e.*, terrorist attacks. 598 U.S. at 493, 506. Otherwise, plaintiffs could always create Anti-Terrorism Act liability by pairing some independent wrongdoing—from regulatory violations to illegal gambling to bribery—with downstream attacks. Defs. Supp. Br. 17-18; Charity Br. 11-13.

"Atypical" or "unusual" conduct is relevant only insofar as it supports an inference that the defendant consciously and culpably participated in the underlying tort. *Taamneh*'s example of where aiding-and-abetting liability "may" apply illustrates the point: A morphine distributor became a co-conspirator in illegal morphine distribution by shipping such massive quantities of morphine as to demonstrate the "inten[t] to further, promote and cooperate" in illegal distribution. *Direct Sales Co. v. United States*, 319 U.S. 703, 707, 711 (1943) (cited at 598 U.S. at 502); Defs. Supp. Br. 16. By contrast, allegations of even deliberate commercial *bribery* do not support any inference of conscious and culpable participation in *terrorism*.

Plaintiffs (at 13) characterize defendants' alleged conduct as "far worse" than the *Direct Sales* defendant's. But the salient question is not whether defendants' alleged provision of government-mandated discounts and commissions on medical goods could somehow be "worse" than industrial-scale illicit morphine distribution. The question is whether each defendant's conduct permits an inference that the defendant consciously and culpably participated in the underlying tort.

Plaintiffs' other common-law authorities (at 12-13) likewise illustrate that unusual conduct is relevant only if it demonstrates conscious and culpable participation in the tort. The *Halberstam* defendant's unusual bookkeeping for her partner's burglary business showed that she was a "willing partner" in burglary. *Halberstam v. Welch*, 705 F.2d 472, 486-87 (D.C. Cir. 1983). And a bank officer who owed a special duty of truth yet recommended a fraudster without investigation demonstrated his "improper motive" and "knowing assistance to fraud." *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1012 (11th Cir. 1985). Conversely, where a banker's transactions were "not so atypical," a court declined to "infer[]" knowledge of fraud. *Camp v. Dena*, 948 F.2d 455, 462 (8th Cir. 1991).

Plaintiffs (at 26-27) observe that the United States' *Taamneh* brief cited this case as one where courts found the "knowing-and-substantial assistance requirement more easily met where defendants engaged in transactions outside the regular course of business." U.S. *Taamneh* Br. 22. The United States has since explained that it made those statements "without the benefit of th[e] Court's subsequent decision" in *Taamneh*, which "did not approve imposing liability whenever a plaintiff can identify an atypical transaction with an organization that affiliates with terrorists." U.S. Br. 18-19, 21 n.3.

b. **Passive/Affirmative Conduct.** Plaintiffs (at 2, 7-11, 19-20) portray *Taamneh* as applying only to "passive," not "affirmative" conduct. But passivity is in the eye of the beholder—the *Taamneh* plaintiffs asserted that the defendants' algorithms provided "active, substantial assistance" to ISIS. 598 U.S. at 499. Here, the complaint alleges that defendants ignored the Ministry's alleged use of their medical goods, not that defendants actively diverted products to terrorism.

Regardless, *Taamneh* did not impose liability for all "affirmative" misconduct however tangentially tied to terrorism. Plaintiffs (at 11) suggest that *Taamneh* treated affirmative acts differently because *Taamneh* separately analyzed allegations that Google shared perhaps $50 in advertising

9

revenue with ISIS. But *Taamneh* cataloged common-law cases like *United States v. Peoni*, 100 F.2d 401 (2d Cir. 1938) (Learned Hand, J.), that rejected aiding-and-abetting liability for "affirmative" conduct like selling counterfeit bills. *See* 598 U.S. at 488, 490-91 & n.10. The lack of more affirmative assistance in *Taamneh* was just one reason among many that complaint fell "far short." 598 U.S. at 499-500, 505; Defs. Supp. Br. 19; U.S. Br. 18-19.

     c. **Financing.** Plaintiffs (at 13-14, 20-22) rely on allegations that defendants' transactions involved "fungible cash and cash-equivalents." But plaintiffs never explain *why* cash or supposed "equivalents" (like cancer medicines and X-ray machines, *e.g.*, JA169, 178-79 (¶¶178, 191)) are tantamount to "funding" terrorism or even especially blameworthy. Many goods or services can contribute to terrorism, including food, ski masks, and social media. There is nothing about money or medical goods that inherently demonstrates conscious, culpable participation in terrorism. Even before *Taamneh*, this Circuit recognized that "financial wrongdoing"—like allegedly helping terrorist-linked entities evade sanctions—did not always amount to aiding and abetting. *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 872 (D.C. Cir. 2022).

10

Plaintiffs' three post-*Taamneh*, out-of-circuit district-court cases (at 16-20, 22, 24) involve allegations of culpable intent bearing no resemblance to this case. In *Zobay v. MTN Group Ltd.*, the court contrasted the *Taamneh* defendants' "'undisputed lack of intent to support ISIS'" and "'arms-length relationship with ISIS'" with allegations that the defendant actively procured embargoed goods useful for "build[ing] more powerful and accurate roadside bombs" for a "terrorist front." 695 F. Supp. 3d 301, 347, 350 (E.D.N.Y. 2023) (quoting 598 U.S. at 504). In *Bonacasa v. Standard Chartered PLC*, banks allegedly structured loans to al-Qaeda's leading supplier of a fertilizer uniquely suited to bomb-making with the specific intent of facilitating production of that fertilizer. 2023 WL 7110774, at *2, *10-11 (S.D.N.Y. Oct. 27, 2023). And in *King v. Habib Bank Ltd.*, a Pakistani bank allegedly worked directly with terrorists, including Osama bin Laden, to help them evade sanctions. 2022 WL 4537849, at *8-10 (S.D.N.Y. Sept. 28, 2022), *reconsideration denied*, 2023 WL 8355359 (S.D.N.Y. Dec. 1, 2023).

Plaintiffs (at 17) also cite a pre-*Taamneh* court-of-appeals case, *Kaplan v. Lebanese Canadian Bank, SAL*, where a Lebanese bank allegedly gave Hezbollah-linked groups special exemptions from bank policies to facilitate sanctions evasion. 999 F.3d 842, 866 (2d Cir. 2021). None of those cases

11

supports liability on anyone who, *without* culpable intent, transacts with alleged terrorist-linked entities.

Plaintiffs' two securities-fraud cases (at 14 n.2) are equally unhelpful. In both, the defendants offered financing in circumstances evidencing conscious and culpable participation in fraud, like structuring a loan to inflate fraudsters' assets. *See Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 537 (6th Cir. 2000); *ABF Cap. Mgmt. v. Askin Cap. Mgmt.*, 957 F. Supp. 1308, 1329-30 (S.D.N.Y. 1997). Plaintiffs' bribery allegations, by contrast, permit no inference of culpable participation in terrorism. *Supra* pp. 6-9.

Plaintiffs (at 13-14, 20) identify Congress' goal of stopping "material support" to terrorism in the Act's statutory findings and legislative history. While Congress imposed *criminal* liability for material support, 18 U.S.C. § 2339A, it limited civil aiding-and-abetting liability to those who "knowingly provid[e] substantial assistance," *id.* § 2333(d)(2).

d. **Proportionality.** Plaintiffs (at 14-15) propose a "proportionality test" whereby even "minimal" involvement in heinous acts would support liability (citation omitted). But terrorism is always heinous; *Taamneh* involved ISIS' mass murder of innocent civilians. 598 U.S. at 479. *Taamneh* nowhere suggested that minimal involvement in terrorism supports liability.

## B.  Plaintiffs Fail to Allege Any Nexus to Specific Attacks

1. Plaintiffs (at 21) acknowledge that *Taamneh* requires allegations that the defendant "aided and abetted the act of international terrorism that injured plaintiffs." Absent a "definable nexus" to specific attacks, plaintiffs must allege assistance so "pervasive, systemic, and culpable" as to aid and abet "each and every … terrorist act committed anywhere in the world" by the attackers. 598 U.S. at 496, 502-03. Plaintiffs cannot meet that demanding standard. Defendants did not become borderline co-conspirators with anti-American militants by allegedly engaging in separate, arm's-length, commercial sales of medical goods to the Iraqi government. Defs. Supp. Br. 19-21.

Plaintiffs (at 21) quote this Court's previous description of the complaint as adequately alleging that "defendants aided and abetted [Jaysh al-Mahdi's] attacks." 22 F.4th at 225. But as the United States observed, this Court did not "trace a 'definable nexus' between the funds and medical goods [defendants] supplied to the Ministry, on the one hand, and the attacks that injured [plaintiffs], on the other." U.S. Br. 14. After *Taamneh*, such attack-specific links are required, absent pervasive, systemic, and culpable aid.

2.  Plaintiffs (at 21) wrongly argue that *Taamneh* authorized liability for all "*foreseeable* terror attack[s]" (quoting 598 U.S. at 502).  As the United States emphasizes, that "misunderstands" *Taamneh*.  U.S. Br. 15 n.1. *Taamneh* observed that "people who *aid and abet a tort* can be held liable for *other* torts that were 'a foreseeable risk' of the intended tort."  598 U.S. at 496 (quoting *Halberstam*, 705 F.2d at 488) (emphases added).  Thus, aiders and abettors who assume a "systemic" "role in an illicit enterprise" may be "liable for all reasonably foreseeable acts taken" by the enterprise.  *Id.*  But to impose liability for all attacks, "a showing of pervasive and systemic aid is *required*"— a standard *Taamneh* underscores five times.  *Id.* at 506 (emphasis added); *accord id.* at 496, 501-02, 506.

Plaintiffs (at 23) try to draw an attack-specific nexus by arguing that Jaysh al-Mahdi used a Ministry ambulance in one of 200-plus attacks.  But defendants manufacture or sell medical goods, not ambulances.  Alleged ties between *the Ministry*'s assets and specific attacks does not show a "definable nexus between *the defendants' assistance* and th[ose] attack[s]." *See id.* at 503 (emphasis added); Defs. Supp. Br. 23.

Because plaintiffs lack any nexus, they carry the "burden" to allege "pervasive, systemic, and culpable assistance to a series of terrorist activities

14

that could be described as aiding and abetting each terrorist act." 598 U.S. at 502-03. Plaintiffs (at 23-24) cursorily claim that defendants' alleged "multimillion-dollar bribes" over multiple years amount to "pervasive" assistance. But that argument ignores that conscious and culpable participation in terrorism is required. The Supreme Court faulted the Ninth Circuit for nearly identical reasoning, erroneously focusing on "the value of defendants' [assistance] *to* [*the attackers*]" instead of "whether defendants culpably associated themselves with [the attackers'] actions." *Id.* at 504.

Dollar value and duration alone cannot establish "pervasive and systemic aid." *See id.* at 506. Plaintiffs' one post-*Taamneh* district-court case finding pervasive aid (at 24) described the defendant as allegedly forming a contractual "joint venture with a known terrorist front" to distribute embargoed American technology used in bomb-making. *Zobay*, 695 F. Supp. 3d at 318, 347-48. Defendants' alleged economically motivated, arm's-length sales of medical goods to the Iraqi Health Ministry come nowhere close to demonstrating systemic participation in all Jaysh al-Mahdi activities.

## C. Plaintiffs' Theory Would Deter International Aid and Reconstruction

Plaintiffs' approach risks devasting consequences for U.S.-encouraged aid and reconstruction assistance. Defs. Supp. Br. 23-26; Chamber Br. 16;

15

Charity Br. 15-18. If all that matters is whether defendants are "blameworthy" (Pls. Supp. Br. 9) based on capacious aggravating factors, liability will be both staggeringly broad and unpredictable. *See* Charity Br. 9. Terrorism is always reprehensible. Social media can turn a small insurgent group into a global juggernaut. *E.g.*, *Taamneh*, 598 U.S. at 491. And sanctions evasion can fuel al-Qaeda. *E.g.*, *Bernhardt*, 47 F.4th at 862-63. Plaintiffs offer no principled distinction for what makes the allegations here "worse." *Cf.* Pls. Supp. Br. 13.

The consequences of plaintiffs' approach are chilling. *All* transactions in Gaza and Yemen, for example, could potentially support liability given Hamas' and the Houthis' pervasive presence—including Hamas' leadership of the Gaza Health Ministry—and corresponding ability to divert aid. Moreover, U.S.-designated foreign terrorist organizations are prolific in conflict zones: Al-Shabaab "holds large swathes" of Somalia; Hezbollah controls multiple Lebanese cabinet ministries; Asa'ib Ahl al-Haqq fights "alongside the Iraqi military" in Syria; and five separate foreign terrorist organizations defend Pakistan's claims to Jammu and Kashmir. *Terrorist Organizations*, CIA World Factbook, https://tinyurl.com/4k4e2b79.

Plaintiffs' theory risks deterring assistance to any country where potential terrorist ties make attacks foreseeable. Charity Br. 15-17. That chilling effect is especially troubling where, as here, the United States *encouraged* the aid that plaintiffs now seek to repackage as culpable support for terrorist attacks. Chamber Br. 16. As amici warn, "the perverse result [would be] even more terrorism, for violent extremism thrives in impoverished and unstable regions." Charity Br. 18.

## II. The Direct-Liability Claims Fail

*Taamneh* independently requires dismissal of the direct-liability claims because plaintiffs have not alleged that defendants (1) proximately caused their injuries, or (2) committed "act[s] of international terrorism." Defs. Supp. Br. 27-31.

Plaintiffs (at 24) urge this Court to "summarily reinstate" its proximate-causation holding because *Taamneh* involved only aiding-and-abetting claims. But *Taamneh* underscores the importance of culpable intent and attack-specific allegations across the board. Defs. Supp. Br. 27-30; Chamber Br. 12-14. Plaintiffs (at 24) note that the United States opposed plenary review on proximate causation but omit that the United States deemed "reasonabl[e]" the point that *Taamneh* defeats proximate causation here. U.S. Br. 21. It

17

would be passing strange to dismiss claims that each defendant aided and abetted attacks that injured plaintiffs, yet simultaneously permit plaintiffs to claim that defendants directly caused those same injuries.

## CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

/s/ Lisa S. Blatt

<table>
<tr><td>

KANNON K. SHANMUGAM
JEH C. JOHNSON
WILLIAM T. MARKS
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*

JESSICA S. CAREY
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019-6064*
  *United States*
  *(212) 373-3000*

*Counsel for Johnson & Johnson, Cilag GmbH International, Ethicon Endo-Surgery, LLC, Ethicon, Inc., Janssen Ortho LLC, Janssen Pharmaceutica NV, Johnson & Johnson (Middle East) Inc., and Ortho Biologics LLC*

</td><td>

LISA S. BLATT
  *Counsel of Record*
CHRISTOPHER N. MANNING
SARAH M. HARRIS
MELISSA B. COLLINS
AARON Z. ROPER
KRISTEN A. DEWILDE
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW*
  *Washington, DC 20024*
  *(202) 434-5000*
  *lblatt@wc.com*

*Counsel for Pfizer Inc., Pfizer Pharmaceuticals LLC, Pfizer Enterprises SARL, Pharmacia & Upjohn Company LLC, and Wyeth Pharmaceuticals LLC*

</td></tr>
</table>

JOHN B. BELLINGER III
DAVID J. WEINER
ARNOLD & PORTER
KAYE SCHOLER LLP
  601 Massachusetts Ave., N.W.
  Washington, DC 20001
  (202) 942-5000

ROBERT REEVES ANDERSON
ARNOLD & PORTER
KAYE SCHOLER LLP
  1144 Fifteenth Street,
  Suite 3100
  Denver, CO 80202-1370
  (303) 863-2325

*Counsel for GE Healthcare USA Holding LLC, GE Medical Systems Information Technologies, Inc., and GE Medical Systems Information Technologies GmbH*

DAVID M. ZIONTS
S. CONRAD SCOTT
LELIA A. LEDAIN
COVINGTON & BURLING LLP
  One City Center
  850 Tenth Street, N.W.
  Washington, DC 20001
  (202) 662-5312

*Counsel for F. Hoffmann-La Roche Ltd*

DAVID W. BOWKER
DONNA M. FARAG
WILMER CUTLER PICKERING
HALE AND DORR LLP
  2100 Pennsylvania Ave., NW
  Washington, DC 20037
  (202) 663-6000

*Counsel for Genentech, Inc. and Hoffmann-La Roche Inc.*

PAUL S. MISHKIN
DAVID B. TOSCANO
CRAIG T. CAGNEY
DAVIS POLK & WARDWELL LLP
  450 Lexington Avenue
  New York, NY 10017
  (202) 450-4292

*Counsel for AstraZeneca Pharmaceuticals LP and AstraZeneca UK Limited*

SEPTEMBER 16, 2024

19

**CERTIFICATE OF COMPLIANCE WITH
TYPEFACE AND WORD-COUNT LIMITATIONS**

I, Lisa S. Blatt, counsel for Defendants-Appellees and a member of the Bar of this Court, certify pursuant to Federal Rule of Appellate Procedure 32(g) that the foregoing Supplemental Reply Brief for Defendants-Appellees is proportionally spaced, has a serif typeface of 14 points or more, and contains 3,250 words.

/s/ *Lisa S. Blatt*
LISA S. BLATT

## CERTIFICATE OF SERVICE

I, Lisa S. Blatt, certify that on September 16, 2024, a copy of the foregoing Supplemental Reply Brief for Defendants-Appellees was filed with the Clerk and served on all parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

*/s/ Lisa S. Blatt*
LISA S. BLATT